UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD DAVIDSON,

               Plaintiff,

       -against-

JUDICIAL COUNCIL OF THE SECOND
CIRCUIT; STATE OF NEW YORK; CITY OF
NEW YORK; MICHELLE MORSE,

               Defendants.

25-CV-1226 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under the court's federal question jurisdiction, alleging that Defendants are violating his rights. He names as Defendants the Judicial Council of the Second Circuit; the State of New York; the City of New York; and Michelle Morse, in her official capacity as the chief medical examiner for the City of New York. He seeks declaratory relief.

By order dated February 12, 2025, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. Plaintiff subsequently filed: (1) an amended complaint, which is the operative pleading in this action (ECF No. 11), (2) a motion for recusal directed at the Hon. Laura T. Swain, to whom this action was then assigned (ECF No. 12), and (3) a document that Plaintiff styles as a "Motion for Urgent Injunctive Relief to Cure Impossibility of Performance Contrived by NYC" (ECF No. 13).

For the reasons that follow, the Court: (1) dismisses the amended complaint; (2) denies Plaintiff's motion for recusal; and (3) denies Plaintiff's motion for emergency relief.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

**BACKGROUND**

The following facts are drawn from the amended complaint (ECF No. 11), which Plaintiff filed as of right on September 3, 2025.[1] In 1979, Plaintiff suffered a traumatic brain injury ("TBI") and thereafter has experienced sequelae of TBI that impair his executive functioning.

In 2005, the State of New York enacted amendments to its constitution that expanded anti-discrimination protections, including for people with disabilities. (ECF No. 1, at ¶ 22.)

Seventeen years later, in January 2022, Plaintiff filed a civil action in this court, in which "he sought meaningful accommodation from SDNY judicial administration – asking for an interactive process for determining reasonable accommodation for cognitive disabilities." (*Id.* at ¶ 45.) He adds that despite his request, it "was not acknowledged and nothing happened." (*Id.*)

---

[1] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

In October 2022, Plaintiff filed another civil action in this court, in which he again sought unspecified accommodations for his disabilities. (*Id*. at ¶ 47.) He alleges that, "as before, neither acknowledgment nor action ensued." (*Id*.)

Plaintiff next alleges that, in 2025, the State of New York further amended its constitution to expand anti-discrimination protections. (*Id*. at ¶¶ 10, 72.)

Plaintiff states that, on unspecified dates, his requests for accommodation—presumably referring to requests that he made in the two above-mentioned cases that he filed in this court— were "belatedly" granted but, in fact, "was the functional equivalent of a 'no.'" (*Id*. at ¶¶ 46, 47.)

Plaintiff seeks both declaratory and injunctive relief.

## DISCUSSION

### A.  Defendant Judicial Council of the Second Circuit

The Court understands the amended complaint as suggesting that Defendant Judicial Council of the Second Circuit violated his rights by failing to ensure that judges of this court provide disability-related accommodations required by law.

Because Plaintiff alleges that this Defendant failed to accommodate his disabilities, the Court construes the amended complaint as asserting claims under the federal disability statutes: the Rehabilitation Act and the Americans with Disabilities Act ("ADA"). As explained below, however, "neither Title II of the ADA nor Section 504 of the Rehabilitation Act apply to the federal judiciary." *Murray v. Murguia*, No. 25-CV-1364, 2025 WL 1101515, at *2 (N.D. Cal. Mar. 12, 2025), *report and recommendation adopted*, 2025 WL 1442705 (N.D. Cal. May 9, 2025), *aff'd*, No. 25-3183, 2025 WL 2092839 (9th Cir. July 25, 2025).

Section 504 of the Rehabilitation Act provides, in relevant part:

No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under *any program or*

3

> *activity* receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a) (emphasis added). The statutory definition of "program or activity" is limited to "operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government"; "a college, university, or other postsecondary institution, or a public system of higher education"; "a local educational agency . . . , system of career and technical education, or other school system"; a "corporation, partnership, or other private organization, or an entire sole proprietorship"; an entity "which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation"; or any combination of these. 29 U.S.C. § 794(b). The Civil Rights Restoration Act of 1987 amended various civil rights statutes, including the Rehabilitation Act, by defining the term "program or activity" to mean "all of the operations of . . . a department, agency . . . or other instrumentality *of a State or of a local government*." 29 U.S.C. § 794(b)(1)(A) (emphasis added). Thus, programs and activities of the federal judiciary are not covered, and therefore not bound, by the Rehabilitation Act. *See Murray*, 2025 WL 1101515, at *2.

Similarly, the ADA does not bind the federal judiciary. The anti-discrimination mandate of Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). Here, the definition of a "public entity" limits the statute's scope to state and local entities: "public entities" include "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). "Thus, by definition, Title II of the ADA does not apply to the federal government or an agency, such as the federal courts." *Moore v. United*

4

*States*, No. 21-CV-1161, 2022 WL 1104986, *1 n. 1 (W.D.N.Y. 2022) (citing *Cellular Phone Taskforce v. F.C.C.*, 217 F.3d 72, 73 (2d Cir. 2000) (per curiam) (finding federal agency not liable under Title II of the ADA)); *see also Murray*, 2025 WL 1101515, at *2; *Melton v. Freeland*, No. 96-CV-0516, 1997 WL 382054, at *1 (M.D.N.C. Feb. 6, 1997) (explaining that federal courts not subject to ADA requirements because definition of "public entities" is limited to state and local governments and their instrumentalities); *Turgeon v. Brock*, No. 94-CV-269 (SD), 1994 WL 803506, at *1 (D.N.H. Dec. 20, 1994) ("Although the judicial branches of state and local governments are encompassed by this definition [of 'public entity,'] the judicial branch of the federal government is not.") (citation omitted).

Therefore, Plaintiff's claims against Defendant Judicial Council of the Second Circuit under the Rehabilitation Act and the ADA are dismissed for for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff relies on another authority in support of his claims: the federal Guide to Judicial Policy, which "took effect on January 1, 1996." *United States v. Hairston*, 804 F. Supp. 3d 570, 586 n.13 (D. Md. 2025) (citing Code of Conduct for Judicial Employees § 310.20(b)). The Guide to Judicial Policy "codifies administrative judiciary policies promulgated by the Director of the Administrative Office of the Courts or the Judicial Conference of the United States." *United States v. Hernandez-Estrada*, No. 10-CR-0558 (BTM), 2011 WL 1119063, at *9 (S.D. Cal. Mar. 25, 2011), *aff'd*, 704 F.3d 1015 (9th Cir. 2012), *on reh'g*, 749 F.3d 1154 (9th Cir. 2014), *and aff'd on other grounds*, 749 F.3d 1154 (9th Cir. 2014). It applies to:

> All employees of the judicial branch, including interns, externs, and other volunteer court employees, except it does not apply to Justices; judges; and employeesAof the United States Supreme Court, the Administrative Office of the United States Courts, the Federal Judicial Center, the Sentencing Commission, and federal public defender offices.

Code of Conduct for Judicial Employees § 310.10(a); *see Hairston*, 804 F. Supp. 3d at 586 n.13.

The Court therefore construes the amended complaint as asserting that the Guide to Judicial

Policy provides him with a private right of action against Defendant Judicial Council of the

Second Circuit.

In the context of federal laws, "[t]he person seeking a private remedy bears the burden of

demonstrating that Congress intended to make one available." *New York City Envtl. Justice

Alliance v. Giuliani*, 214 F.3d 65, 73 (2d Cir. 2000). Here, however, the Guide to Judicial Policy

was not enacted by Congress; instead, it reflects the policy goals of the Administrative Office of

the Courts and the Judicial Conference of the United States. *See Hernandez-Estrada*, 2011 WL

1119063, at *9. More to the point, "private rights of action to enforce federal law must be created

by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v.

Redington,* 442 U.S. 560, 578 (1979) (remedies available are those "that Congress enacted into

law"). Because Congress did not enact the Guide to Judicial Policy, there is no colorable

argument that Congress intended for private litigants to bring standalone civil actions to enforce

its provisions. Plaintiff therefore fails to state a claim for relief against Defendant Judicial

Council of the Second Circuit. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.      Defendants State of New York, City of New York, and Michelle Morse**

Plaintiff appears to allege that Defendants State of New York, the City of New York, and

Morse are liable for failing to enforce unspecified provisions of the New York State

Constitution, against the federal judiciary, that provide protection to people with disabilities.

Under the Supremacy Clause of the United States Constitution, "state laws that 'interfere

with, or are contrary to' federal law" have no force or effect. *Hillsborough Cnty., Fla. v.

Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 712–13 (1985) (quoting *Gibbons v. Ogden,* 9

Wheat. 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.)). "Even where Congress has not completely

displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143 (1963). As relevant here, state law cannot be enforced when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941). A state law is also invalid if it purports to regulate the federal government. *See Mayo v. United States*, 319 U.S. 441, 445 (1943) (explaining that under the Supremacy Clause, "the activities of the Federal Government are free from regulation by any state"). *See generally Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 698–699 (1984).

Because states and localities cannot regulate the activities of the federal courts, *see Mayo*, 319 U.S. at 445, Plaintiff's claims against the State of New York, the City of New York, and the City of New York's medical examiner in her official capacity are barred by the Supremacy Clause and are therefore dismissed for failure to state a claim, *see* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.     Plaintiff's motions**

**1.     Motion for recusal**

By motion filed with the court on September 3, 2025, Plaintiff moved for the recusal of the Hon. Laura T. Swain, the judge to whom this action was assigned at that time. He argues that recusal is required because, by virtue of her position as Chief Judge of this court, she is a member of the Judicial Council of the Second Circuit.[2]

A judge is required to recuse herself from "any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Plaintiff states no facts suggesting that the Hon. Laura T. Swain "displayed a deep-seated favoritism or antagonism that would make fair

---

[2] *But see* 28 U.S.C. § 1322(a) (setting forth the membership of each Judicial Council and showing that the only required member is the chief judge of the *circuit*).

judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Moreover, and more importantly, this action is no longer assigned to the Hon. Laura T. Swain; it has been assigned to my docket. Plaintiff's motion for the recusal of the Hon. Laura T. Swain is therefore moot, and the Court denies it.

### 2.    Motion for "emergency injunctive relief"

Plaintiff also filed a document that he styles as a "Motion for Urgent Injunctive Relief to Cure Impossibility of Performance Contrived by NYC." (ECF No. 13.) To obtain such relief, Plaintiff must show: (1) that he is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of his case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

Plaintiff's submissions do not demonstrate: (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. As shown above, Plaintiff has failed to state a claim against any Defendant in this action. Plaintiff therefore cannot credibly argue that he is likely to succeed on his claims or that there are serious questions going to the merits of this case.

Moreover, Plaintiff's submissions do not suggest that he will suffer irreparable harm in the absence of preliminary relief. In his complaint and in his motion, Plaintiff offers no facts

suggesting that he intends to imminently bring a civil action in this court or any other court within the Second Circuit. Plaintiff provides no reason for the Court to believe that future litigation opportunities will be impaired when Plaintiff has not identified any imminent litigation opportunities that he will pursue. The Court therefore denies Plaintiff's motion for emergency injunctive relief.

**D.      Supplemental jurisdiction declined**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**E.      Leave to amend denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

**CONCLUSION**

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court denies Plaintiff's motion for recusal and his motion for emergency injunctive relief. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 12 and 13.

The Court also directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

Dated:   March 26, 2026
         New York, New York

_Louis L. Stanton_
Louis L. Stanton
U.S.D.J.

10